RICHARD D. McCUNE, (#132124)
rdm@mccunewright.com
ELAINE S. KUSEL (*Pro Hac Vice* pending)
esk@mccunewright.com
JAE (EDDIE) K. KIM, (#236805)
jkk@mccunewright.com
MCCUNEWRIGHT LLP
2068 Orange Tree Lane, Suite 216
Redlands, California 92374
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Attorneys for Plaintiff and Putative Class

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD PITKIN, on behalf of himself and all others similarly situated,<br><br>         Plaintiffs,<br><br>    v.<br><br>FORD MOTOR COMPANY, and DOES 1 through 10, inclusive,<br><br>         Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**1. VIOLATION OF UNFAIR BUSINESS PRACTICES ACT [CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, *ET SEQ.*]**<br><br>**2. VIOLATION OF FALSE ADVERTISING LAWS [CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500, *ET SEQ.*]**<br><br>**3. VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT [CALIFORNIA CIVIL CODE § 1750, *ET SEQ.*]**<br><br>**4. FRAUD**<br><br>**5. NEGLIGENT MISREPRESENTATION**<br><br>**6. DECEIT [CALIFORNIA CIVIL CODE § 1710]**<br><br>**DEMAND FOR JURY TRIAL** |

1

CLASS ACTION COMPLAINT

## INTRODUCTION

This consumer fraud class action is based on Defendant Ford Motor Company's false and misleading marketing campaign for its 2013 model year C-MAX Hybrid and Fusion Hybrid ("Subject Vehicles"). Ford launched the C-MAX Hybrid in October, 2012, touting the vehicle as "America's most fuel efficient and affordable hybrid utility vehicle." In its advertising and marketing campaign for the vehicles, Ford claimed that the C-MAX Hybrid and Fusion Hyrid achieved a class leading 47 Miles Per Gallon (MPG). These materials helped FORD achieve record sales for the first two months of C-MAX Hybrid sales, outselling its rival, hybrid sales leader Toyota, but there was a problem. These ads were false. In reality, the C-MAX Hybrid and Fusion Hybrid actually achieved far fewer mpg: Plaintiff Richard Pitkin who purchased a C-MAX Hybrid in October has not achieved 47 mpg, but rather had averaged approximately 37 mpg. Pitkin's mileage experience was not the exception, but rather the rule. Consumer Reports recently tested the C-MAX Hybrid and Fusion Hybrid and determined that the vehicle achieved 37 and 39 combined MPG, respectively, and those results were confirmed by a reporter at the L.A. Times who found the C-MAX Hybrid got 37.5 combined MPG. Accordingly, though successfully marketed as a class leading 47 mpg vehicle, 2013 C-MAX Hybrid buyers have not achieved anything like that fuel efficiency.

Plaintiffs Richard Pitkin, individually, on behalf of himself and on behalf of all others similarly situated (*i.e.*, the members of the Plaintiff Class described and defined within this Complaint), herein alleges as follows:

## I

## JURISDICTION AND VENUE

1. This Court has personal jurisdiction over the Defendant because Defendant has conducted and continues to conduct business in the State of California, and because Defendant has committed the acts and omissions complained of herein in the State of California.

2. Venue as to Defendant is proper in this judicial district. Defendant FORD Motor Company sells a substantial amount of automobiles in this district, has dealerships in this district, and many of Defendant's acts complained of herein occurred in Folsom, California, in this district.

2

CLASS ACTION COMPLAINT

## II

## GENERAL ALLEGATIONS

3. This civil action is based on Ford Motor Company's campaign to boost sales of its vehicles by portraying its cars as having class leading gas mileage. During the class period, FORD Motor Company (hereinafter "Defendant" or "FORD") accomplished this goal by misrepresenting the miles per gallon of its vehicles in filings with the EPA, and through the launch of an extensive marketing campaign which touted the supposed class leading gas mileage of the company's C-Max and Fusion Hybrid models. The marketing campaign claimed that the vehicles achieved 47 MPG in highway, city and combined driving. However, in actuality, the vehicles achieved significantly worse gas mileage. Plaintiff Richard Pitkin, for himself and all others similarly situated, bring this action for damages, rescission and reimbursement of the purchase price of the vehicles as well as an order enjoining FORD from engaging in further deceptive advertisements, pursuant to the Unfair Advertising, California Business and Professional Code §17200, *et seq.*; False Advertising California Business & Professional Code § 17500, *et seq.*; Consumer Legal Remedies Act, California Civil Code §1750, *et seq*. statutory deceit California Civil Code §1710 ; and common law fraud and negligent misrepresentation.

4. Plaintiff RICHARD PITKIN is a resident and citizen of the city of Roseville, California. He purchased a 2013 Ford C-MAX Hybrid on or about October 30, 2012 at Folsom Lake Ford in Folsom, California. He made his decision to purchase a Ford C-MAX Hybrid after researching, viewing, and relying on television, print and online FORD advertisements and marketing materials that stated the C-MAX Hybrid achieved 47 miles per gallon highway, city and combined. Based on information and belief, those same televisions, print and online advertisements were disseminated by FORD throughout California and the United States regarding the expected gas mileage of the FORD C-MAX Hybrid. Fuel efficiency was the primary basis for Mr. Pitkin's decision to purchase a C-MAX Hybrid.

5. Specifically, among others, Mr. Pitkin reviewed the C-MAX Hybrid brochure, the second page of which contained a photo of the vehicle with a graphic "47 MPG City & HWY." He also saw commercials in which the narration said the new C-MAX Hybrid "beats Prius v with better MPG", and which said, "Say hi to the all new 47 Combined MPG C-MAX Hybrid." Based on information and

belief, these Internet, TV, print and online advertisements were disseminated by FORD throughout California and the United States regarding the expected gas mileage of the 2013 FORD C-MAX and Fusion Hybrids.

6. The advertised representations of the 47 mpg fuel efficiency rating were the primary reason that Mr. Piktin chose to purchase the 2013 C-MAX Hybrid.  The representation that the C-MAX Hybrid would achieve 47 MPG whether driven on the highway, in the city or in some combination of the two presented the mileage figure as the actual, expected fuel efficiency of the vehicle.

7. Based on these representations which informed that the C-MAX Hybrid would achieve 47 MPG in all types of driving, Plaintiff reasonably believed that the C-MAX Hybrid would actually achieve 47 mpg when driving in the real world.  Plaintiff heavily relied on these representations when he decided to buy the 2013 C-MAX Hybrid However, after purchasing the vehicle, Plaintiff discovered that it consistently achieved gas mileage far below the advertised mileage under normal, real-world use, both on the highway and in the city.

8. Plaintiff did not know when he purchased the vehicle that the 47 MPG EPA estimated mileage for the C-MAX Hybrid overstated the vehicle's estimated fuel efficiency and that the advertised mpg was inaccurate as he reasonably expected that FORD would not falsely advertise the mpg. Plaintiff has been damaged from FORD's false, misleading, and inadequate representations of mpg ratings.

9. Defendant FORD MOTOR COMPANY is a global automotive industry leader based in Dearborn, Michigan that manufactures automobiles across six continents.   Through dealerships, FORD causes its vehicles to be sold in California.   FORD's C-MAX Hybrid is produced at Ford's Wayne, Michigan Assembly plant.  In an attempt to capitalize on strong consumer preference for better fuel economy, FORD launched a "power of choice" strategy to deliver leading fuel economy across its lineup.  However, in the process of promoting sales, FORD engaged in widespread misleading and deceptive advertisements, including throughout California, regarding the real-world gas mileage of the C-MAX and Fusion Hybrid by promoting grossly inflated gas mileage numbers when the vehicles, in fact, fall substantially short of attaining in real-world, normal use.

CLASS ACTION COMPLAINT

10. The true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue such Defendants by such fictitious names. Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiffs will seek leave of Court to amend this Complaint to reflect the true names and capacities of the Defendants designated herein as DOES when such identities become known.

11. Based upon information and belief, Plaintiffs allege that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

## II

## FACTUAL BACKGROUND

### A. The Launch of the C-MAX Hybrid

12. In the third quarter 2012, FORD launched the new C-MAX and Fusion Hybrid in the United States. FORD touted the C-MAX Hybrid as "America's most affordable and fuel efficient hybrid utility vehicle."

13. The introduction of the C-MAX and Fusion Hybrid marked the debut of FORD's first dedicated line of hybrid vehicles. FORD positioned the vehicles as fuel efficient. The Company noted that its rationale for launching the C-MAX and Fusion Hybrid was that, "customers increasingly want to save money at the pump even as gas prices rise over time."

14. The first step in its plan to position the C-MAX Hybrid as America's most fuel efficient hybrid was to report EPA estimated mileage that was class leading. FORD did so by reporting to the EPA that the C-MAX Hybrid achieved an EPA estimated 47 mpg, city, 47 highway and 47 combined mpg figures that just so happened to be better than its chief rival the Toyota Prius v. After the 47 MPG figure was enshrined in the EPA fuel economy estimates, FORD used the figure for an extensive ad campaign.

15. In advertisements and press releases, FORD stated that the C-MAX Hybrid "delivers EPA-certified 47 mpg city, highway and combined, up to 7 mpg better than the Prius v." and claimed that customers would pay less at the dealership and less at the pump for a C-MAX versus a Prius v.

16. FORD's advertising for the C-MAX Hybrid focused on the purported class leading fuel economy of the vehicle. In one ad, the Company compared the C-MAX to the Prius v., asking which hybrid has better MPG? The ad then showed in a cartoon graphic that the Prius v got 44 MPG while C-MAX achieved 47 mpg, showing that the C-MAX had class leading fuel economy, and better MPG than the Prius.

17. In another ad entitled "Say Wheeee", FORD stated that the C-MAX hybrid "bests" the Toyota Prius v in mpg , concluding the commercial with the statement, "Say Hi to the all new 47 combined mpg C-MAX Hybrid."  The video component of the ad showed an image of the vehicle with an accompanying "47 mpg" graphic.

18. Another ad, entitled "Be Great" contained the narration, "Meet the five passenger Ford C-MAX Hybrid… [that] beats Prius v with better MPG…Say hi to the all new 47 combined mpg C-MAX Hybrid."  The video of the ad showed a large 47 mpg displayed above an image of the vehicle.

19. The ads touting that the vehicle achieved 47 mpg were the centerpiece of the 2013 C-MAX and Fusion Hybrid ad campaign. In each, the narrator simply refers to the 2013 C-MAX Hybrid as the Forty Seven combined mile per gallon C-MAX Hybrid. According to Federal Trade Commission regulations, for TV, if the estimated MPG appears in the video, the disclosure must appear in the video; if the estimated MPG is audio, the disclosure must be audio. 16 C.F.R. 259(2)(a). However, the audio on each of the C-MAX ads contained the tagline, "the Forty Seven combined Mile Per Gallon C-MAX" but had no audio disclosure that this was an estimate of any kind. In addition, federal regulations require that if a general mileage claim is made without reference to highway or city mileage, the EPA city mileage must be disclosed. 16C.F.R.259(2)(a)(1)(iii).  FORD's ads all failed to meet this standard.

20. The ads hammering home the 47 mpg message had their desired effect. The October 2012 launch of the C-MAX was a success. FORD sold 3182 C-MAX Hybrids in October, outselling its primary competitor the Toyota Prius v, which sold 2,769 vehicles in the same period.

6

CLASS ACTION COMPLAINT

21. In November, the strong positive trend continued, with recorded sales of 4,848 C-MAX Hybrid vehicles, representing a 52% increase over October sales figures. The success of the C-MAX Hybrid helped drive Ford's small car sales to a 12 year high.

22. The C-MAX's and Fusion's success was based on purported class leading fuel economy as buyers seeking fuel economy chose the vehicle. Sixty-five percent of C-MAX Hybrid buyers were new to FORD and the Toyota Prius was the No.1 competitive trade-in model for the vehicle. According to FORD, more than 97 percent of new car shoppers considered fuel economy to be a priority.

23. The purpose of the EPA gas mileage estimate is to provide a consistent way for consumers to be able to compare the fuel efficiency of different vehicles under identical test conditions. However, the EPA estimates are not designed to determine, nor are they accurate predictors of, the actual expected mileage for a vehicle under normal, real life driving conditions. The reason is that the test conditions are such as to maximize fuel mileage far beyond what a normal customer would experience. First, the EPA mileage tests are not conducted on roads, but rather are conducted in laboratories on machines known as dynamometers that do not provide the normal challenges to fuel mileage as would be experienced under real world driving conditions. Further, the highway portion of the test averages only 48.3 mph and tops out at 60 mph. Obviously, an average highway speed of 48.3 mph is not reflective of normal highway speeds and will result in inflated mpg versus normal highway driving conditions. In addition, the fuel used for these tests is a special fuel that is more efficient than fuel used by consumers in normal driving conditions. Also, the test lasts about 95 minutes with the car's air conditioning on for just 10 minutes of that time. Finally, the test is performed with only the driver, who is a professional driver whose job is to maximize the results of the test. Each of these issues results in a test mpg figure that is inflated over what can be expected in real world driving conditions and, as such, is improper to use for purposes of representing to customers what they can expect from the vehicle in real life driving conditions.

24. Additionally, the EPA relies on automakers to conduct their own tests, and self-report the results. The agency physically tests and audits only about 15% of the models on the market.

7

CLASS ACTION COMPLAINT

25. As a result of the tremendous difference in driving conditions between the EPA testing and normal, real-world driving, the EPA mileage estimates can be substantially better than the mileage attained by the same models driven in the real world.

26. On its website, the EPA acknowledges this discrepancy by stating the rating "may not accurately predict the average MPG you will get." In fact, the EPA, which requires that auto manufacturers place window stickers(called Moroney Stickers) on all new models with the EPA city and highway estimates printed on them, also requires on the sticker as a significant, material disclosure the words, "[a]ctual mileage *will vary*," pursuant to 40 C.F.R. § 600.307-86(a)(ii)(A). (Emphasis added).

27. In the case of FORD's 2013 C-MAX and fusion Hybrid vehicles, because the vehicle purportedly got 47 MPG no matter whether driving was highway or city, any discrepancy between real world driving and EPA estimates should have been less than in vehicles where there was a significant variation between city and highway numbers.

28. Instead, however, the discrepancy between the EPA estimate mpg ratings and actual fuel economy achieved by Plaintiff Pitkin, Consumer Reports and an L.A. Times reporter--of approximately10 mpg-- is far greater than has been reported with other vehicles.

29. Specifically, as disclosed on December 6, 2012, Consumer Reports magazine reported that it had tested the C-MAX Hybrid and found that the C-MAX Hybrid actually achieved a combined 37 MPG based on a 35 city mpg and 38 highway mpg, and the Fusion Hybrid a combined 39 MPG. This ten mile per gallon discrepancy was, according to Consumer Reports, the largest discrepancy between overall mpg results and the estimates published by the EPA that the magazine had found among current models.

30. Consumer Reports' results were not an aberration. A L.A. Times reporter also tested the vehicle and found that combined fuel economy to be 37.5 mpg, consistent with Consumer Reports and Plaintiff Pitkin's real world experience.

31. According to Consumer Reports, more than 80 percent of vehicles it tests for gas mileage are within 2 mpg of the EPA-Estimated numbers supplied by manufacturers.

32. Plaintiffs and the members of the class believed FORD's advertising and purchased their vehicles. However, they then discovered that their new cars did not get the gas mileage advertised and

8

CLASS ACTION COMPLAINT

set forth in the EPA estimated values for city and highway driving. Purchasers of the C-MAX and Fusion Hybrid were dissatisfied with the fuel economy of the vehicles and felt misled by FORD's ads.

33. Plaintiff further challenge FORD's systematic advertising scheme that misleadingly and unfairly uses the existing EPA mileage numbers to represent and imply that the miles-per-gallon EPA estimate reflects actual, expected mileage under normal, real-world driving conditions. FORD accomplishes this scheme in several ways. First, it advertises the mpg ratings that are inaccurate for what customers will experience in normal real-world use. Second, in so far as it purports to be advertising the EPA mpg estimates, it does so while failing to disclose that the ratings are in fact based on testing performed under the EPA standard and that they are estimates. Third, it provides additional affirmative misrepresentations that indicate that consumers should expect the vehicles to achieve the advertised mpg ratings in normal, real-world use.

34. Plaintiffs and the putative class reasonably relied on FORD's material false representations overstating the estimated fuel efficiency of its vehicles to the EPA which were printed on the Moroney window sticker on every vehicle sold or leased during the class period. A reasonable consumer would expect and rely on FORD's representations that the vehicles would achieve 47 MPG. Furthermore, a reasonable consumer in today's market attaches material importance to advertisements of high gas mileage, as fuel efficiency is one of the most, if not *the* most, important considerations in making purchasing decisions for most consumers.

## IV

## CLASS ACTION ALLEGATIONS

35. Plaintiff initially proposes a Nationwide class – the "Class" – in litigating this case, as defined as follows:

> All purchasers of 2013 FORD C-MAX and Fusion Hybrid vehicles who purchased or leased their vehicles in the United States.

Excluded from the above class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

36. Alternatively, Plaintiff proposes a California class, as defined as follows:

All purchasers of 2013 FORD C-MAX and Fusion Hybrid vehicles who purchased their vehicles in California.

Excluded from the above class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

37. This action is brought as a class action and may properly be so maintained pursuant to the provisions of California Code of Civil Procedure section 382 and California Civil Code section 1781. Plaintiffs reserve the right under Rule 1855(b), California Rules of Court, to amend or modify the Class description with greater specificity or further division into subclasses or limitation to particular issues, based on the results of discovery.

38. **Numerosity of the Class** – The members of the Class are so numerous that their individual joinder is impracticable. There were approximately nine thousand C-MAX vehicles sold in the first two months after its introduction. Plaintiffs are informed and believe that there are thousands of members in the class. Inasmuch as the class members may be identified through business records regularly maintained by Defendant and its employees and agents, and through the media, the number and identities of class members can be ascertained. Members of the Class can be notified of the pending action by e-mail, mail, and supplemented by published notice, if necessary;

39. **Existence and Predominance of Common Question of Fact and Law** – There are questions of law and fact common to the Class. These questions predominate over any questions affecting only individual class members. These common legal and factual issues include, but are not limited to:

   a. Whether the subject vehicles achieve gas mileage materially lower than the advertised expected mileage;
   b. Whether the subject vehicles achieve mileage range on a single tank of gas materially less than the advertised expected range.
   c. Whether FORD's overstatement of its vehicle's fuel economy was materially misleading,
   d. Whether FORD's advertisements were false and deceptive in advertising the expected mileage of the subject vehicles in normal, real-world highway usage;

10

CLASS ACTION COMPLAINT

    e. Whether FORD's advertisements failed to provide material disclosures that the expected gas mileage cannot be achieved in normal, real-world highway usage;

    f. Whether FORD's conduct violates the laws as set forth in the causes of action.

40. **Typicality** – The claims of the representative Plaintiffs are typical of the claims of each member of the Class. Plaintiff, like all other members of the Class, has sustained damages arising from Defendant's violations of the laws, as alleged herein. The representative Plaintiffs and the members of the Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendant.

41. **Adequacy** – The representative Plaintiff will fairly and adequately represent and protect the interests of the Class members and have retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class members.

42. **Predominance and Superiority** – This suit may be maintained as a class action under California Code of Civil Procedure Section 382, California Civil Code Section 1781 and Federal Rule of Civil Procedure 23(b)(3), because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class and a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct. Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

43. The Class Plaintiff contemplates the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action. Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, the Class Plaintiffs would contemplate the use of additional media and/or mailings.

44. In addition to meeting the California statutory prerequisites of a Class Action, this action is properly maintained as a Class Action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

    a. Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

        i. Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

        ii. Adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

    b. The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

    c. Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a Class Action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

        i. The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

        ii. The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

CLASS ACTION COMPLAINT

     iii. The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

     iv. The difficulties likely to be encountered in the management of a Class Action.

## FIRST CAUSE OF ACTION
### (Violation of California Business & Professions Code Sections 17200, *et seq.* – Unfair Business Practices Act)

45. Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

46. The Unfair Business Practices Act defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice. The Act also provides for injunctive relief, restitution, and disgorgement of profits for violations.

47. Defendant's unlawful, unfair, and fraudulent business acts and practices are described throughout this Complaint and include, but are not limited to the following. First, it advertises the mpg ratings that are inaccurate for what drivers would actually achieve in the real world. Second, insofar as it purports to be advertising the EPA mpg estimates, it does so while failing to disclose that the ratings are in fact based on testing performed under the EPA standard and that they are estimates. Furthermore, compliance with the EPA testing standard itself is questionable, as required by 16 C.F.R. § 259.2(a). Third, it fails to provide the disclaimer that the advertised rates will vary with actual mpg ratings achieved in the real world, consistent with the requirements of 40 C.F.R. § 600.302-08(b)(4). Fourth, it provides additional affirmative misrepresentations that indicate that consumers should expect the vehicles to achieve the advertised mpg ratings in normal, real-world use.

48. In addition to the above, the conduct as alleged throughout the complaint constitutes a violation of False Advertising Laws (Cal. Bus. & Prof. Code § 17500, *et seq.*), the Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*), statutory Deceit (Cal. Civ. Code § 1710), and fraud and negligent misrepresentation that not only result in liability as individual causes of action, they also provide a basis for a finding of liability under California Business and Professions Code § 17200, *et seq.*

49. Furthermore, Defendant's practices violate the declared legislative policies as set forth by the Federal government in 40 C.F.R. § 600.307(a)(ii)(A); 40 C.F.R. § 600.302-08(b)(4) and 16 C.F.R. § 259.2(a).

50. Plaintiffs and the Class members, and each of them, have been damaged by said practices. Pursuant to California Business and Professions Code §§ 17200 and 17203, Plaintiffs, on behalf of themselves and all others similarly situated, seek relief as prayed for below.

**SECOND CAUSE OF ACTION**
**(Violation of California Business & Professions Code Sections 17500, *et seq.* –**
**False Advertising Laws)**

51. Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

52. Defendant disseminated advertisements in print, online, and television formats materially misleading and deceptive information and omitted material information, as discussed throughout the Complaint, for purposes of inducing customers to purchase the subject vehicles, in violation of California Business and Professions Code § 17500, *et seq*.

53. Plaintiffs and the Class, and each of them, have been damaged by said practice and seeks relief as prayed below.

**THIRD CAUSE OF ACTION**
**(Violation of California Civil Code Section 1750 *et seq.* –**
**Consumer Legal Remedies Act)**

54. Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

55. The following definitions come within the meaning of the Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq*.):

    a. The members of the Class, all of whom purchased the subject vehicles manufactured and sold by HYUNDAI are "consumers" (Cal. Civ. Code § 1761(d));

    b. Defendant FORD is a "person" (Cal. Civ. Code § 1761(c));

    c. Plaintiffs' and each and every Class members' purchase of the subject vehicle constitute a "transaction" (Cal. Civ. Code § 1761(e)); and

    d. The subject vehicles are "goods" (Cal. Civ. Code § 1761 (a)).

56. The acts and practices of Defendant as discussed throughout the Complaint, constitute "unfair or deceptive acts or practices" by Defendant, that are unlawful, as enumerated in section 1770(a) of the California Civil Code.

57. Such misconduct materially affected the purchasing decisions of Plaintiffs and the members of the Classes.

58. Plaintiffs seek restitution and injunctive relief pursuant to California Civil Code § 1780.

59. Plaintiffs seek restitution and injunctive relief pursuant to California Civil Code section 1780.

**FOURTH CAUSE OF ACTION**
**(Fraud)**

60. Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

61. The misrepresentations, nondisclosure, and/or concealment of material facts made by Defendant to Plaintiffs and the members of the Class, as set forth above, were known, or through reasonable care should have been known, by Defendant to be false and material and were intended by Defendant to mislead Plaintiffs and the members of the Class.

62. Plaintiffs and the Class were actually misled and deceived and were induced by Defendant to purchase the subject vehicles which they would not otherwise have purchased.

63. As a result of the conduct of Defendant, Plaintiffs and the Class members have been damaged. In addition to such damages, Plaintiffs seek punitive or exemplary damages pursuant to California Civil Code § 3294 in that Defendant engaged in "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

**FIFTH CAUSE OF ACTION**
**(Negligent Misrepresentation)**

64. Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

65. Defendant had a duty to provide honest and accurate information to its customers so that customers could make informed decisions on the substantial purchase of automobiles.

66. Defendant specifically and expressly misrepresented material facts to Plaintiff and Class members, as discussed above.

67. Defendant knew, or in the exercise of reasonable diligence should have known, that the ordinary consumer would be misled by Defendant's misleading and deceptive advertisements.

68. Plaintiffs and the Class members justifiably relied on Defendant's misrepresentations and have been damaged thereby.

**SIXTH CAUSE OF ACTION**
**(California Civil Code § 1710 - Deceit)**

69. Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

70. Based on Defendant's conduct as discussed above, Defendant has engaged in fraud and deceit as set forth in California Civil Code § 1710.  Plaintiffs and the Class members have reasonably relied on the material misrepresentations and omissions made by Defendant and have been damaged thereby.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, demands judgment against and general and special relief from Defendant as follows:

1. An order certifying that the action may be maintained as a Class Action as defined herein and appointing Plaintiffs and their counsel of record to represent the defined Class;

2. An order enjoining Defendant under California Business and Professions Code §§ 17203 and 17535 and California Civil Code §§ 1780 and 1781:

   a. To rescind the sales of subject vehicles purchased in California and/or reimburse Plaintiffs and the Class members the purchase price for those subject vehicles as restitution of all funds improperly obtained by Defendant as a result of such acts and practices declared by this Court to be an unlawful, fraudulent, or an unfair business act or practice, a violation of laws, statutes, or regulations, or constituting unfair competition;

   b. To disgorge all profits and compensation improperly obtained by Defendant as a result of such acts and practices declared by this Court to be an unlawful, fraudulent, or unfair business act or practice, a violation of laws, statutes, or regulations, or constituting unfair competition; and

   c. To cease engaging in false advertising and to disseminate an informational campaign to correct its misrepresentations and material omissions.

3. For damages under the causes of action for fraud, negligent misrepresentation and statutory Deceit;

4. For punitive damages, pursuant to California Civil Code § 3294;

5. For reasonable attorney's fees and costs, pursuant to California Code of Civil Procedure § 1021.5, California Civil Code § 1780(d), and other statutes as may be applicable;

6. For prejudgment interest to the extent allowed by law;

7. For costs of suit incurred herein;

8. For such other and further relief as the Court deems appropriate.

DATED:  December 7, 2012.                                   M<small>C</small>C<small>UNE</small>W<small>RIGHT</small>, LLP

                                                BY:    /S/
                                                       Richard D. McCune
                                                       Attorney for Plaintiffs

### DEMAND FOR JURY TRIAL

Plaintiff, and all others similarly situated, hereby demands a trial by jury herein.

DATED:  December 7, 2012.                                   M<small>C</small>C<small>UNE</small>W<small>RIGHT</small>, LLP

                                                BY:    /S/
                                                       Richard D. McCune
                                                       Attorney for Plaintiffs

17

CLASS ACTION COMPLAINT